663 So.2d 207 (1995)
John OLIVIER, Sr., Plaintiff-Appellant,
v.
ALLSTATE INSURANCE CO., et al., Defendant-Appellee.
No. 95-306.
Court of Appeal of Louisiana, Third Circuit.
October 4, 1995.
*208 Bennett Boyd Anderson Jr., Lafayette, for John K. Olivier, Sr.
M. Candice Hattan, Lafayette, for Allstate Insurance Co., et al.
Before SAUNDERS, SULLIVAN and KNIGHT,[1] JJ.
SAUNDERS, Judge.
The sole question before us is whether the trial court erred in awarding general damages of $9,000.00. Finding clear abuse of the *209 trial court's discretion, we amend plaintiff's general damages award to $50,000.00, the lowest reasonable amount required by his circumstances.

FACTS
While assisting relatives by marriage in the replacement of a roof, plaintiff, John K. Olivier, Sr., fell some 8 to 10 feet when the ladder on which he was descending slipped on a wet piece of plywood. After trial on the merits, the jury apportioned fault evenly between plaintiff and Allstate's insured, Arista Broussard, the uncle of plaintiff's wife.
On appeal, plaintiff does not contest the jury's apportionment of fault or its awards for past and future medical expenses and impairment of earning capacity. Plaintiff does, however, contest the balance of $9,000.00 awarded for general damages. The respective uncontested and contested items include the following before a reduction of 50%, the percentage of fault allocated to plaintiff by the jury:

Uncontested:
Past Medical Expenses .......................................... $5,000.00
Future Medical Expenses ........................................$20,000.00
Impairment of Earning Capacity, Past and Future ................ $3,000.00
Contested:
Physical Pain and Suffering, Past and Future ................... $5,000.00
Permanent Impairment or Disability ............................. $2,000.00
Mental Pain and Suffering, Past and Future ..................... $2,000.00
Lost of Enjoyment of Life, Past and Future ........................ $00.00

STANDARD OF REVIEW
A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La.1989). This court has announced a two-part test for the reversal of a factfinder's determinations:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
See Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. Id. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous.
Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. See generally, Cosse v. Allen-Bradley Co., 601 So.2d 1349, 1351 (La.1992); Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840 (La. 1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell, 549 So.2d at 844-45. Nonetheless, this Court has emphasized that "the reviewing court must always keep in mind that `if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have *210 weighed the evidence differently.'" Housley v. Cerise, 579 So.2d 973 (La.1991) (quoting Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990)).
This court has recognized that "[t]he reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts." Canter v. Koehring Co., 283 So.2d 716 (La.1973). Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Id.

Stobart v. State Through Dept. of Transp. and Development, 617 So.2d 880, 882-883 (La.1993) (notes omitted).
This is not to suggest, however, that courts of appeal are required to not review findings of fact by the trial court. To the contrary, as the Louisiana Supreme Court stated in Ambrose v. New Orleans Police Dept. Ambulance Service, 93-3099, pp. 8-9 (La. 7/5/94), 639 So.2d 216, 221:
Notwithstanding the Court's earlier guidance to reviewing courts in Stobart v. State through DOTD, 617 So.2d 880 (La. 1993), it was not our purpose in that case to mandate that the trial court's factual determinations cannot ever, or hardly ever, be upset. Although deference to the factfinder should be accorded, the court of appeal, and the Louisiana Supreme Court, nonetheless have a constitutional duty to review facts. Of course, the reviewing court may not merely decide if it would have found the facts of the case differently. Rather, notwithstanding the belief that they might have decided it differently, the court of appeal should affirm the trial court where the latter's judgment is not clearly wrong or manifestly erroneous. Because the court of appeal has a constitutional function to perform, it has every right to determine whether the trial court verdict was clearly wrong based on the evidence, or clearly without evidentiary support. (Notes omitted)

ANALYSIS
Following the accident on September 22, 1992, plaintiff was treated by his family doctor, Dr. Donald Pavy, through February 25, 1993, for complaints of pain in his right foot and hip. Dr. Pavy treated plaintiff conservatively for his subjective complaints of pain, prescribing medication and X-rays before ultimately referring him to an orthopedic surgeon. Dr. Pavy discharged plaintiff October 2, 1992, but on February 15, 1993, plaintiff returned with recurring hip and foot pains for which Dr. Pavy again prescribed pain relief medicine. Dr. Pavy issued work-release prescriptions for plaintiff on two occasions for one week each time, first on September 22, 1992, and second on February 22, 1993, when Dr. Pavy referred his patient to Dr. Fred Weber, an orthopedic physician in Lafayette.
Although Dr. Weber was not called to testify, plaintiff indicated that he had seen the doctor on three or four occasions and that the specialist continued treating plaintiff conservatively with pain medication. Plaintiff candidly admitted that Dr. Weber could find nothing wrong with him after reviewing the X-rays. Although he prescribed pain medication, Dr. Weber gave plaintiff no injections during the course of the treatment.
No relief forthcoming, plaintiff contacted counsel, who referred him to Dr. Clifton Shepherd. Plaintiff's history was taken when plaintiff saw Dr. Shepherd for the first time in March 1993. Plaintiff was thirty-one years old and had fallen approximately 8 feet from a ladder onto his right hip, causing complaints of back pain radiating down the right leg.
According to the specialist, by the time Dr. Shepherd saw plaintiff, plaintiff's "pain had primarily localized to his back and he was not having that much problem with his leg or with his right hip." Plaintiff's complaints of pain concerned the area between the middle of the back and moving toward the right hip, with no complaints of pain in this region before the accident.
At first, plaintiff's case seemed to be a typical soft tissue injury. X-rays ordered by Dr. Shepherd showed plaintiff's back to be *211 normal, leading Dr. Shepherd to assume that plaintiff had strained his back in September 1992 and that it had not yet cleared up.
Plaintiff was given a corset following either his first or second weekly appointment with Dr. Shepherd. After six months of continuing troubles, however, Dr. Shepherd thought it wise to have an MRI and a CAT Scan taken to diagnose potential disc and nerve involvement. (The X-ray ordered by Dr. Weber was unequal to this task.) Between March 24, 1993, and April 27, 1993, his next scheduled monthly appointment, Dr. Shepherd prescribed anti-inflammatory medication similar to those previously prescribed by Dr. Pavy.
By the time Dr. Shepherd next saw plaintiff, he had the results of the CAT Scan and MRI. The CAT Scan was basically normal, but the MRI showed that the last disc in his back was bulging and had herniated and caused a free fragment.
Plaintiff's symptoms and tests, in Dr. Shepherd's view, were consistent with a ruptured disc. Notwithstanding this diagnosis, Dr. Shepherd did not consider or discuss the need for an operation with his patient because plaintiff's physical exam indicated no spasms.
Overall, plaintiff's prognosis was mixed. While Dr. Shepherd assigned plaintiff a 5% impairment rating to the whole body for his disc problem, by the last time Dr. Shepherd saw plaintiff, April 20, 1994, plaintiff's condition had improved to the point that prescription medications were no longer required. Additionally, Dr. Shepherd believed that there was no need to limit plaintiff's work further than to avoid heavy labor at least since June 15, 1993, when plaintiff was allowed at his request to return to regular duty as a plasterer. Finally, in early 1994, Dr. Shepherd considered repeating an MRI to see if plaintiff's condition had worsened, but because plaintiff had improved so much by April of that year, Dr. Shepherd and his patient together decided to hold off on doing the study.
We begin our review by recognizing the general rule that an appellate court may not disturb an award of general damages made by a trial court absent an abuse of the great discretion afforded the trier of fact in this area. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977). However, we are also cognizant of the well-settled rule that a jury cannot award special damages for personal injuries and refuse to award any amount in general damages where the injuries present objective symptoms. Labauve v. Central Mutual Ins. Co., 491 So.2d 146 (La.App. 3rd Cir.1986); Brown v. Grigsby, 394 So.2d 847 (La.App. 3rd Cir.1981); Moss v. Security National Insurance Company, 350 So.2d 247 (La.App. 3rd Cir.1977) writ denied, 352 So.2d 239 (La.1977).
* * * * * *
Perhaps, however, the jury erroneously believed that since the plaintiff could work he was not entitled to any general damages. The failure to award general damages in this case where the jury awarded special damages and the plaintiff exhibited objective symptoms was a clear abuse of the jury's discretion. Reck v. Stevens, supra; Coco v. Winston Industries, Inc., supra; Labauve v. Central Mutual Ins. Co., supra; Brown v. Grigsby, supra; Moss v. Security National Insurance Company, supra.

Ammons v. St. Paul Fire & Marine Ins. Co., 525 So.2d 60, 63-64 (La.App. 3 Cir.), writ denied, 525 So.2d 1045 (La.1988).[2]
In this case, the trial court awarded plaintiff future medical expenses of $20,000.00. Neither party has appealed the award for future medical expenses. At any rate, after reviewing the record, we can find no fault in its award: while on one hand, there is but a low probability of surgery being required for plaintiff's condition, his odds of needing surgery are greater than a *212 person with no back problems.[3] Additionally, the record clearly indicates that plaintiff might occasionally need to have prescription medicines for short periods of time in the future, and might need occasional MRI's costing $1,000.00 each.
We do, however, find an abuse of discretion in the $9,000.00 general damages awarded plaintiff for past and future physical and mental pain and suffering and for past and future loss of enjoyment of life. Plaintiff did sustain a ruptured disc (albeit a somewhat small rupture), the free bone fragment from which, although not presently impinging on a nerve root, will forever threaten or affect plaintiff. In addition, at trial, plaintiff testified that several times a week prolonged sitting or standing causes him back pains, and that his preventative reduction of his pains requires that he consume six aspirins or equivalent per day. The $9,000.00 general damages award, if sufficient to compensate plaintiff through his seven months active treatment, certainly is not adequate to compensate the thirty-one year old plaintiff for the increased risk for the balance of plaintiff's life.
Having found the jury abused its much discretion, we must ask what is the lowest reasonable award plaintiff is entitled to recover under the circumstances? Reck v. Stevens 373 So.2d 498. "When there is a legal right to recover damages but the amount cannot be exactly estimated, the courts have reasonable discretion to assess damages based upon all the facts and circumstances of the particular case." Moore v. Thornwell Warehouse Ass'n, 524 So.2d 828 (La.App. 3 Cir.1988). See also La.Civ.Code art. 1999. In the end, we amend plaintiff's contested general damage awards to $50,000 in globo, subject to reduction consistent with the trial court's apportionment of fault. We believe this is the lowest reasonable award plaintiff is entitled to recover under the circumstances enumerated above.[4]

DECREE
For the foregoing reasons, the general damages awarded by the trial court on the contested issues set forth above is amended to $50,000.00, subject to reduction pursuant to La.Civ.Code art. 2323. Costs taxed to defendants-appellees.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] Judge William N. Knight of the Thirty-first Judicial District participated in this decision as judge pro tempore by appointment of the Louisiana Supreme Court.
[2] Although in Ammons the jury awarded no damages, we believe its reasoning is persuasive in cases where the jury's award is virtually negligible when taken in light of the severity of plaintiff's injuries.
[3] Plaintiff's odds of needing an operation would be much greater only if he were to engage in unacceptable activities.
[4] Compare: Lawrence v. Dunaway, 554 So.2d 1339 (La.App. 1 Cir.1989); Marcel v. Allstate Ins. Co., 536 So.2d 632 (La.App. 1 Cir.1988), writ denied, 539 So.2d 631 (La.1989); Feyerabend v. Dept. of Wildlife, 544 So.2d 577 (La.App. 1 Cir. 1989) (appendix); Duplessis v. Inman, 539 So.2d 880 (La.App. 4 Cir.1989).

Butler v. Eastern College of Health Vocations, Inc., 93-704 (La.App. 5 Cir. 1/25/94), 631 So.2d 1254, cited by defendants, is of little use, as there the court rejected efforts by an insurer to reduce its comparative fault and affirmed plaintiff's damages award. Plaintiff did not appeal the trial court's damages award.