| KRISHNENDU DEY | * | NO. 2022-CA-0469 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| EDDIE WILLIAMS AND | * | |
| LYNDON SOUTHERN | | FOURTH CIRCUIT |
| INSURANCE COMPANY AND | * | |
| FIRST CHICAGO INSURANCE | | STATE OF LOUISIANA |
| COMPANY | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-07292, DIVISION "G-11"
Honorable Robin M. Giarrusso, Judge
* * * * * *
**Judge Daniel L. Dysart**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Rosemary Ledet, Judge Paula A. Brown)


Dean Joseph Favret
Angela Cecelia Imbornone
Seth Holden Schaumburg
Lauren A. Favret
Anthony J. Russo,
FAVRET DEMAREST RUSSO & LUTKEWITTE
1515 Poydras Street
Suite 1400
New Orleans, LA 70112

      COUNSEL FOR PLAINTIFF/APPELLEE


Scott A. Cannon
Shannon M. Livermore
Ryan P. Gregoire
CANNON & LIVERMORE, L.L.C.
122 Village St.
Slidell, LA 70458

      COUNSEL FOR DEFENDANT/APPELLANT, FIRST CHICAGO INSURANCE COMPANY

                 **AFFIRMED**
            **DECEMBER 29, 2022**

DLD
RML
PAB

In this auto tort case, the defendant uninsured/underinsured motorist (UM) provider, First Chicago Insurance Company (FCIC), appeals a trial court judgment in favor of the plaintiff, Krishnendu Dey, which awarded the plaintiff damages, as well as penalties and attorney's fees due to FCIC's arbitrary and capricious failure to tender the UM policy limits to the plaintiff. For the reasons that follow, we affirm the judgment of the trial court.

**FACTS**

On July 18, 2018, the taxicab driven by Mr. Dey was stopped in traffic when it was rear-ended by a Nissan Altima driven by Eddie Williams. Mr. Williams was insured by Lyndon Southern Insurance Company ("Lyndon Southern") with an automobile liability policy having a $15,000.00 policy limit. Mr. Dey was insured by First Chicago Insurance Company ("FCIC") with a policy, which had $25,000.00 in UM coverage.

At the time of the accident, Mr. Dey was 42 years old and he claimed as a result of the accident, he experienced pain in his neck, both shoulders, his lower back and both knees. Mr. Dey first sought medical treatment on July 23, 2018 at

SouthShore Physician Group, where he was seen by Dr. Barry L Bordonaro. A physical examination of Mr. Dey revealed pain and tenderness in the cervical spine, bilateral trapezius muscles, and in the lumbar spine with limited range of motion and objective spasm. Dr. Bordonaro related, more probable than not, Mr. Dey's injuries and symptoms to the motor vehicle accident on July 19, 2018. Therapy was ordered, medication was prescribed, and home exercises were recommended.

From July 25, 2018 through December of 2018, Mr. Dey received therapy at SouthShore more than twenty times. Before the end of 2018, Mr. Dey also returned to Dr. Bordonaro on at least eight more occasions with complaints of persistent pain in his neck, both shoulders, his lower back and both knees. On September 21, 2018, Dr. Bordonaro ordered an MRI of the lumbar spine. Dr. Bordonaro's November 7, 2018 examination of Mr. Dey revealed pain and tenderness in the glenohumeral joint in the left shoulder with decreased range of motion in addition to Mr. Dey's prior complaints. Dr. Bordonaro prescribed additional medication, ordered an MRI of Mr. Dey's left shoulder, and referred Mr. Dey to an orthopedist for his left shoulder and lumbar spine.

On December 11, 2018, an MRI of the lumbar spine was performed and revealed the following: focal disc desiccation at L5-S1 and straightening of the lumbar curvature consistent with probable muscle spasm; a disc herniation at L5-S1 measuring 5.1 mm and tenting of the posterior longitudinal ligament; and an

annular tear of the L5-S1 disc, with an abnormal T2 signal likely representing edema and hemorrhage of the disc.

From December 29, 2018 through February 25, 2019, Mr. Dey returned to India to help care for his son who had suffered an injury to his arm requiring surgery. Upon his return from India, Mr. Dey returned to Dr. Bordonaro on February 28, 2019 and March 25, 2019, with ongoing left shoulder and lower back pain. On March 29, 2019, Dr. Bordonaro concluded that Mr. Dey had reached the maximum medical benefit from the treatment at SouthShore.

On the referral of Dr. Bordonaro, Mr. Dey followed up his treatment with Dr. Marco A. Rodriguez, a board-certified orthopedic spine surgeon, on May 15, 2019. Dr. Rodriguez reviewed the lumbar MRI film and concluded that it revealed a disc herniation at L5-S1 with an annular tear. His physical examination of Mr. Dey revealed tenderness over the left trapezius and bilateral lumbar facet joints worsened with loading the facets on extension and rotation, and pain in the left shoulder with Impingement I and II with Jobe's test. Dr. Rodriguez's diagnoses were neck pain, left shoulder pain, lumbosacral facet joint syndrome, and a disc herniation at L5-S1 were directly caused by the motor vehicle accident on July 19, 2018. Dr. Rodriguez ordered an MRI of the left shoulder and active physical therapy of the lumbar spine and left shoulder to be followed by lumbar facet injections should the pain persist after therapy and referred Mr. Dey to an orthopedic extremity specialist for his left shoulder.

4

From July of 2019 through October of 2019, Mr. Dey traveled to India due to the death of his daughter.  Upon his return from India, Mr. Dey returned to Dr. Rodriguez on November 5, 2019 and December 31, 2019, with ongoing pain in his neck, left shoulder, and back.   The examination and recommendations were unchanged, and Dr. Rodriguez concluded that lumbar injections would be considered should physical therapy fail to relieve Mr. Dey's pain.

Mr. Dey continued to periodically treat for chronic pain in his neck, left shoulder, and lower back with Dr. Rodriguez.  There was an interruption in Mr. Dey's treatment from February 22, 2021 through May 20, 2021 because he traveled to India to move his family to the United States.  Mr. Dey also did not have the recommended low back spinal injections because he allegedly feared paralysis.

**PROCEDURAL HISTORY**

On April 4, 2019, Mr. Dey settled all claims against Mr. Williams and Lyndon Southern for Mr. Williams's policy limit of $15,000.00.  Mr. Dey issued a *McDill*[1] demand to FCIC for a tender of its UM policy limit in the amount of $25,000.00 pursuant to La. R.S. 22:1892 and La. R.S. 22:1973 with supporting documentation regarding the accident, Mr. Williams's policy, the settlement, and Mr. Dey's medical treatment and bills (which totaled $9,399.00 at the time).  Out of an abundance of caution, Mr. Dey filed suit against Mr. Williams and Lyndon

---

[1] *McDill v. Utica*, 475 So.2d 1085 (La. 1985).

Southern on July 15, 2019. Mr. Williams stipulated that he was at fault and as stated above, Lyndon Southern tendered its policy limit of $15,000.00 to Mr. Dey.

On September 13, 2019, Mr. Dey sent a second demand to FCIC to unconditionally tender the UM policy limit of $25,000.00 to Mr. Dey. FCIC tendered $10,715.00 to Mr. Dey on September 20, 2019. Mr. Dey filed an amended petition for damages on May 19, 2020, adding FCIC as a defendant and alleging that FCIC acted in bad faith by unconditionally tendering an "inadequate amount" under its UM coverage. FCIC filed an answer denying that it had acted in bad faith and alleging that Mr. Dey had failed to mitigate his damages.

The matter proceeded to trial on February 14-15, 2022. Following a bench trial, the trial court rendered a judgment on February 24, 2022, in favor of the plaintiff, awarding the policy limit $25,000.00 plus $7,142.50 in penalties and $7,142.50 in attorney's fees "as a result of First Chicago Insurance Company's arbitrary and capricious failure to tender its uninsured/underinsured motorist limits pursuant to Louisiana Revised Statute 22:1892 and Louisiana Revised Statute 22:1973." It is from this judgment that FCIC appeals.

**DISCUSSION**

On appeal, FCIC raises the following assignments of error: (1) the trial court erred finding that the plaintiff's damages were worth $40,000.00; (2) the trial court erred in finding FCIC acted arbitrarily and capriciously under La. R.S. 22:1892 and 22:1973, awarding penalties and attorney's fees; and (3) the trial court erred by not reducing Plaintiff's award commensurate with his failure to mitigate his damages.

6

The plaintiffs have also answered the appeal and seek an award of additional fees for the appeal.

"In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury." La. C.C. art. 2324.1. It is well settled that before a Court of Appeal can disturb a damage award made by a fact finder, the record must clearly reveal that the trier of fact abused its discretion in making its award. *Scarberry v. Entergy Corp.*, 13-0214, p. 30 (La. App. 4 Cir. 2/19/14), 136 So.3d 194, 213-14.

Louisiana law provides that a claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident, the symptoms of the disabling condition appear and continually manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of a causal connection between the accident and the disabling condition. *See Housley v. Cerise*, 579 So.2d 973, 980 (La. 1991) (citing *Lukas v. Insurance Company of North America*, 342 So.2d 591 (La. 1977)).

In the instant case, the record indicates that prior to the July 19, 2018 accident, Mr. Dey appeared to be in good health and had no history of neck, left shoulder, or back problems, nor had he ever had an MRI of his lumbar spine. Mr. Dey sought treatment shortly after his accident, treated fairly regular basis for over three years, and an MRI of the lumbar spine revealed a disc herniation at L5-S1 with an annular tear. Both of Mr. Dey's treating physicians, Dr. Bordonaro and

Dr. Rodriguez, related his injuries to the July 19, 2018 accident. Even the defendant's expert witness, Dr. Andrew Todd, could not say that Mr. Dey's injuries were not caused by the July 18, 2018 accident.

As stated above, Mr. Dey's *McDill* demand included quantum figures for damage awards since the 1990s for injuries similar to his own. In *Duplessis v. Inman*, 539 So.2d 880 (La. App. 4th Cir. 1989), this Court found $50,000.00 in general damages to be the lowest amount reasonably within the discretion of the trier of fact that could be awarded to a plaintiff who sustained an aggravation of a bulging lumbar disc with a degree of permanent disability. Similarly, in *Durham v. CNA Insurance Companies*, 544 So.2d 679 (La. App. 3d Cir. 1989), the Third Circuit found that $50,000.00 in general damages was the lowest amount within a jury's discretion that could be awarded to a plaintiff who sustained an aggravation of a lumbar disc disease. Likewise, the First Circuit found in *Lee v. Alsobrooks*, 98-0049 (La. App. 5 Cir. 5/27/98), 712 So.2d 1060, that a general damage award of $50,000.00 was the lowest amount within the discretion of a trier of fact that could be awarded to a plaintiff who sustained a herniated disc at the C5-6 level with surgery not indicated. A jury had originally awarded the plaintiff $15,000.00 for her injury. *Id.* at pp. 6-7, 712 So.2d at 1063. Also, in *Olivier v. Allstate Ins. Co.*, 95-0306 (La. App 3 Cir. 10/4/95), 663 So.2d 207, the Third Circuit raised a jury award of $9,000.00 in general damages for a herniated cervical disk to $50,000.00. As such, the trial court's finding in the instant case that compensation for a herniated disc is worth more than $40,000.00 is supported by an examination

of general damage awards for similar injuries. Accordingly, we find no error regarding FCIC's first assignment of error.

In order to recover penalties and attorney's fees pursuant to the provisions of La. R.S. 22:1892 for a UM claim, a plaintiff has the burden of establishing: that the insurer received satisfactory proof of loss; that the insurer failed to pay the claim within the applicable statutory period; and that the insurer's failure to pay was arbitrary and capricious or without probable cause. *Boudreaux v. State Farm Mut. Ins. Co.*, 04-1339, p. 4 (La. App. 4 Cir. 2/2/05), 896 So.2d 230, 233. A claimant provides satisfactory proof of loss for a UM claim when the insurer receives sufficient facts to fully apprise it that: (1) the uninsured or underinsured status of the owner or operator of the other vehicle involved in the accident; (2) the fault of the owner or operator of the other vehicle; (3) the damages resulting from such fault; and (4) the extent of those damages. *McDill v. Utica*, 475 So.2d 1085, 1090 (La. 1985) (citing *Hart v. Allstate Ins. Co.*, 437 So.2d 823 (La. 1983)). "Once the four criteria are met, the insurer cannot refuse to pay the claim on the basis that the insured is unable to prove the exact extent of the general damages, which are by their nature subjective." *Jones v. Johnson*, 45,877, p. 10 (La. App. 2 Cir. 12/15/10), 56 So.3d 1016, 1022.

As stated above on July 8, 2019, a *McDill* demand for tender of the $25,000.00 policy limits was sent to FCIC, which included Mr. Dey's medical records and medical bills totaling $9,399.00. Mr. Dey's medical records showed that Dr. Rodriguez directly related his neck pain, left shoulder pain, lumbar facet

9

syndrome and herniation at L5-S1 with an annular tear to the July 19, 2018 accident. Mr. Dey's demand also included quantum from Louisiana courts which have found that a range of $50,000.00 to $85,000.00 was the lowest amount that can be awarded for a disc herniation. After receiving this information, FCIC waited two years until October 1, 2021 to hire Dr. Todd to obtain his opinion to try and dispute causation. However, Dr. Todd issued a report relating Mr. Dey's lumbar injuries to the July 2018 crash.

The facts show that FCIC was made aware of the nature, severity and causation of Mr. Dey's injuries on at least seven occasions including July 8, 2019, September 13, 2019, January 3, 2020, April 22, 2020, February 9, 2021, September 14, 2021, and January 17, 2022, but FCIC continuously refused to tender its UM policy limits. Accordingly, we find no error in the trial court's finding that FCIC acted arbitrarily and capriciously in refusing to tender it's UM policy limits to Mr. Dey. Therefore, we find no error in the trial court's award of penalties and attorney's fees.

Regarding FCIC's third assignment of error regarding mitigation of damages, we find no merit. As illustrated by the quantum for prior awards concerning similar injuries to those suffered by Mr. Dey, we agree with the trial court that the herniated disc itself would be worth more than Mr. Williams's $15,000.00 policy limit plus the $25,000.00 UM policy limit.

**CONCLUSION**

For the above and foregoing reasons, we affirm the judgment of the court below. We also decline to award the plaintiff additional attorney's fees for the appeal.

**AFFIRMED**