DAVID CRAWFORD

VERSUS

ALLSTATE INSURANCE COMPANY

NO. 21-CA-117

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 784-348, DIVISION "K"
HONORABLE ELLEN SHIRER KOVACH, JUDGE PRESIDING


November 03, 2021


**JOHN J. MOLAISON, JR.**
**JUDGE**


Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and John J. Molaison, Jr.


**AFFIRMED IN PART; REVERSED IN PART**
   **JJM**
   **SMC**
   **FHW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE-2ND APPELLANT,
DAVID CRAWFORD
Robert J. Caluda

COUNSEL FOR DEFENDANT/APPELLANT,
ALLSTATE INSURANCE COMPANY
Christopher P. Lawler

**MOLAISON, J.**

In this appeal, which arises from an auto accident case, the appellant/defendant Allstate Insurance Company ("Allstate") challenges the awards made to the plaintiff, David Crawford, following a bench trial. For the reasons that follow, the judgment of the trial court is affirmed in part and reversed in part.

**FACTS AND PROCEDURAL HISTORY**

On May 31, 2018, Mr. Crawford filed a petition for damages which alleged that on June 6, 2017, he was involved in an automobile accident that resulted in him sustaining several injuries. The petition stated that because the other driver's insurer had already paid its policy limits, Mr. Crawford was entitled to seek coverage from Allstate Insurance Company ("Allstate"), the uninsured motorist carrier for the car he was driving on the date of the accident.[1] Prior to trial, the parties stipulated that Allstate had given Mr. Crawford seven thousand dollars ($7,000.00) for bodily injury and five thousand dollars ($5,000.00) for medical payments.

The matter proceeded to a judge trial on September 14, 2020. Mr. Crawford testified at trial that he had been in two previous car accidents, one in 2002 and the second in 2012, before the most recent accident in 2017 that forms the basis of the instant lawsuit. Mr. Crawford recounted that immediately after the accident, he began to experience neck pain. At the time of trial, he also claimed that he had pain through to the bottom of his left leg. Mr. Crawford stated he worked in pain for two months after the 2017 accident, but he was unable to lift heavy items at his carpentry job with his brother's company. He had not worked since that time, was on disability, and planned to undergo surgery for his injuries. Mr. Crawford

---

[1] The petition stated the vehicle Mr. Crawford drove on the date of the accident was a work truck owned by his brother, Edward Crawford.

recounted that he had sustained back injuries following his 2012 accident, but that his pain was greater after the 2017 accident. He had undergone treatment with Dr. Alexis Waguespack every three months for the seven years prior to trial and he identified his relevant medical bills, which were entered into evidence. In connection with his lawsuit, Mr. Crawford underwent a brief independent medical examination with Dr. David Aiken, who had been retained by Allstate.

On cross examination, Mr. Crawford was referred to his deposition during which he said that he did not work for his brother's company following the accident. Mr. Crawford stated that he did not consider his time spent working with a friend's A/C company after the 2017 accident to be a job. With regard to his past accidents, Mr. Crawford clarified that these had caused him neck and back problems as well as pain in his left leg. He underwent shoulder surgery as a result of a 1996 accident, and injured his knee, neck, and back in a 2002 car collision. He also spent five months in the infirmary after being attacked while incarcerated, although he did not recall if his back was injured at that time. Mr. Crawford said that, in spite of his prior injuries, he was still able to work until the 2017 accident.

With respect to his treatment with Dr. Waguespack, Mr. Crawford testified on cross-examination that she had recommended spinal surgery after the 2012 accident, specifically a lower back fusion from L4 to S1. Dr. Waguespack recommended surgery again in 2014. Mr. Crawford stated that he previously declined surgery because he was still able to continue to work, but the new injuries caused him to change his mind. He was also asked about prior medical history and past complaints. Mr. Crawford denied that he had indicated pain in both legs to Dr. Waguespack in 2014. He was also questioned about telling Dr. Waguespack about intense back pain and increasing leg pain three months before the 2017 accident, as well as complaints of numbness in his fingers and radiating leg pain one week before the 2017 accident. Mr. Crawford stated that his treatment with Dr.

Waguespack was the same before and after the 2017 accident. At no time during his treatment with Dr. Waguespack did he indicate to her that he had a drug addiction.

The July 17, 2020 deposition of Dr. Alexis Waguespack, an orthopedist, was entered into evidence. Regarding her treatment of Mr. Crawford, she opined that an MRI taken two months following the 2017 accident showed significant herniations that were not present in either 2012 or 2014. She acknowledged that Mr. Crawford had pre-existing degenerative disease but indicated the accident had caused new "neurologic involvement and nerve root impingement." She disagreed with Dr. Aiken's conclusion[2] of no neural impingement and found that, although he was a candidate for back surgery before the 2017 accident, Mr. Crawford's new injuries contributed to an increased need for surgery. Although Mr. Crawford's treatment remained the same both before and after the 2017 accident, and she would have continued to treat him even if the 2017 accident had not occurred, Dr. Waguespack stated that Mr. Crawford's symptoms were worse after the accident and the imaging studies correlated to his complaints. Her opinion was that the 2017 accident aggravated Mr. Crawford's prior medical issues.

At the conclusion of trial, the court rendered judgment in favor Mr. Crawford, awarding the following amounts: fifty thousand dollars ($50,000.00) in general damages, sixteen thousand one hundred fifty-eight dollars and seventy cents ($16,158.70) in special damages, as well as costs. After applying credit for payments previously tendered to Mr. Crawford by Allstate, the total amount of the

---

[2] Dr. David Aiken's initial report, dated April 1, 2019, offered three conclusions: Mr. Crawford could have sustained some injury in the June 6, 2017 accident "if the forces were sufficient;" Mr. Crawford had complaints of back pain at least three years prior to the 2017 accident and was taking roughly the same amount of pain medication as before the accident, and; comparing the lumbar MRI report of 2012 with the one of 2017 indicates some worsening of Mr. Crawford's lumbar condition during that interval. In an "additional medical evaluation" dated November 19, 2019, Dr. Aiken opined that he found no objective evidence that Mr. Crawford's neck and low back problems were "any worse than before June 6, 2017." Dr. Aiken also concluded that, based on a physical examination, Mr. Crawford was "not in need of any cervical or lumbar surgery."

judgment was calculated to be eighteen thousand dollars ($18,000.00), plus judicial interest and court costs. Allstate timely sought the instant suspensive appeal. Mr. Crawford also timely sought a cross-appeal.

## LAW AND ANALYSIS

On appeal, Allstate raises three assignments of error:

1) The lower court committed manifest error in finding David Crawford and Dr. Alexis Waguespack credible and in finding David Crawford sustained significant injury to his back in the June 6, 2017 accident.

2) The lower court abused its discretion in awarding $66,158.70 to David Crawford.

3) The lower court committed manifest error and/or an error of law in awarding special damages in the amount of $16,158.70.

*Mr. Crawford's Credibility*

Allstate first asserts that the trial court erred in finding Mr. Crawford's testimony regarding his 2017 injuries to be credible. The trier of fact is not bound to accept a plaintiff's perception, or any other witness' perception, of the nature and extent of his injuries. *Ladner v. Gov't Employees' Insurance Co.*, 08-0323 (La. App. 4 Cir. 10/8/08), 992 So.2d 1098, 1102, *writ denied*, 08-2864 (La.2/6/09), 999 So.2d 783. Further, the trier of fact can choose to reject all of the testimony of any witness or may believe and accept any part of a witness' testimony and reject any other part. *Id.* at 1101. When findings are based on credibility determinations, the manifest error/clearly wrong standard demands great deference to the trier of fact's findings, for only the factfinder can be aware of the variations in demeanor and tone that bear so heavily on the listener's belief in what is said. *Menard v. Lafayette Ins. Co.*, 09-1869 (La. 3/16/10), 31 So.3d 996, 1008, *citing Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989).

While a review of Mr. Crawford's testimony regarding his work history following the 2017 accident, as well as some other miscellaneous details, appears

to be inconsistent at times, the testimony regarding his medical history both before and after the 2017 accident was mostly consistent. In summary, Mr. Crawford testified that he had been injured in prior accidents and was undergoing continuing medical treatment at the time of the 2017 accident. Mr. Crawford also testified that the 2017 accident resulted in new injuries which increased his pain level and resulted in him being classified as disabled. Even though surgical intervention had been recommended to him in the past, the new injuries were the reason he finally agreed to consider undergoing surgery. To the extent that the trial court was free to consider and weigh any contradictions in Mr. Crawford's testimony, we find no abuse of discretion in its ultimate finding of his credibility.

*Dr. Waguespack's Credibility*

The trial record indicates that the court relied on Dr. Waguespack's deposition in finding that Mr. Crawford's prior injuries had been aggravated, and that he had sustained new herniations and nerve impingement as a result of the 2017 accident. As a general rule, the testimony of a treating physician should be accorded greater weight than that of a physician who examines a patient only once or twice. However, the treating physician's testimony is not irrebuttable, and the trier of fact is required to weigh the testimony of all medical witnesses. *Rocha v. Ace Prop. & Cas. Ins. Co*., 19-173 (La. App. 5 Cir. 12/18/19), 286 So.3d 1142, 1149, *citing Mosley v. Pennzoil Quaker State*, 850 So.2d 1100 (La. App. 2d Cir. 7/23/03).

In the instant case, Dr. Waguespack treated Mr. Crawford for several years prior to, and after, the 2017 accident. As correctly noted by the trial court, Dr. Waguespack's impression was that the most recent accident had resulted in both aggravation of Mr. Crawford's prior injuries as well as additional injuries. Allstate's own expert, Dr. Aiken, in his first report acknowledged the possibility that Mr. Crawford had sustained additional injury in the 2017 accident, and noted a

change in the lumbar MRIs taken before and after the 2017 accident. Dr. Aiken's conclusions about Mr. Crawford's treatment being consistent before and after the 2017 accident were acknowledged by both Mr. Crawford and Dr. Waguespack. To the extent that Dr. Aiken later opined that Mr. Crawford had not sustained any additional injuries in the 2017 accident, the trial court apparently gave more weight to Dr. Waguespack's evaluations. Factual determinations of the trier of fact will not be set aside by the reviewing court unless they are manifestly erroneous or clearly wrong in light of the entire record. *Rosell v. ESCO*, *supra* at 844. Here, after reviewing the entire record, we cannot say that the trial court was clearly wrong in finding credibility in Mr. Crawford's treating physician, Dr. Waguespack.

In its second and third assignments of error Allstate first generally contends that the trial court erred both in awarding any damages at all, and then specifically in awarding special damages.

*General Damages*

General damages are those which may not be fixed with pecuniary exactitude; instead, they "involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms." *Buckheister v. U.S. Environmental Services, LLC*, 11-1148 (La. App. 5 Cir. 5/31/12), 97 So.3d 414, 422, *writ denied*, 12-1462 (La. 10/8/12), 98 So.3d 861. Vast discretion is accorded the trier of fact in fixing general damage awards. La. C.C. art. 2324.1. This vast discretion is such that an appellate court should rarely disturb an award of general damages. *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1261 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Thus, the role of the appellate court in reviewing general damage awards is not to decide what it considers to be an appropriate award, but rather to

review the exercise of discretion by the trier of fact. *Buckheister*, *supra* at 422, *citing Youn*, *supra,* at 1260. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances, that the appellate court should increase or reduce the award. *Youn, supra* at 1261. Only after a determination that the trier of fact has abused its "much discretion" is a resort to prior awards appropriate and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion. *American Motorist Insurance Company v. American Rent–All, Inc.,* 579 So.2d 429 (La.1991); *Scott v. Hospital Service District No. 1 of the Parish of St. Charles*, 496 So.2d 270 (La.1986); *Carollo v. Wilson*, 353 So.2d 249 (La.1977); *Coco v. Winston Indus., Inc*., 341 So.2d 332 (La.1976).

At trial, testimony and evidence were consistent and uncontradicted that prior to Mr. Crawford's 2017 accident, several factors in his life were different. In particular, his daily pain level before the accident was less. After the accident, however, Mr. Crawford testified that his daily pain level became debilitating from his new injuries, which affected several aspects of his life, including his ability to perform household chores, his physical relationship with his long-term girlfriend, and his ability to participate in certain leisure activities such as fishing. Mr. Crawford testified that the accident affected him mentally as well, resulting in a "disturbing" state of mind and anger over the injuries. The new physical and mental injuries began in 2017 and were still present through the time of trial, a span of several years. Based on the foregoing, we do not find that the trial court abused its great discretion in awarding general damages to Mr. Crawford. Further, as we find the award to be neither inadequate nor excessive after our review of the record, we will pretermit an analysis of quantum.

*Special damages*

Under this assignment, Allstate first contends that Mr. Crawford was not entitled to any special medical costs because he failed to prove that he sustained any injuries because of the 2017 accident, and that any treatment Mr. Crawford received after 2017 was merely a continuation of care for his prior injuries.

Special damages, such as medical expenses, are those which either must be specially pled or can be determined with relative certainty. *Wainwright v. Fontenot*, 00–0492 (La. 10/17/00), 774 So.2d 70, 74; *Romano v. Jefferson Par. Sheriff's Off.*, 13-803 (La. App. 5 Cir. 3/26/14), 138 So.3d 688, 693, *writ denied*, 14-0700 (La. 5/16/14), 139 So.3d 1028. The plaintiff bears the burden of proving special damages by a preponderance of the evidence. *Wainwright*, 00–0492 at 10, 774 So.2d at 77. In reviewing the trial court's factual conclusions with regard to special damages, an appellate court must satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the trial court's conclusions, and the finding must be clearly wrong. *Kaiser v. Hardin*, 06-2092 (La. 4/11/07), 953 So.2d 802, 810. For the reasons previously discussed, we find that Mr. Crawford did, in fact, prove that his prior injuries were aggravated and he also sustained new injuries as a result of the 2017 accident. Thus, the trial court correctly found that special damage awards were appropriate.

*Dental Bills In The Record*

Allstate specifically challenges the trial court's award of special damages for dental bills which were entered into the record. Mr. Crawford argues, however, that Allstate is precluded from raising this assignment of error on appeal because it did not timely object to the dental bills being admitted into evidence.

The record shows that, at the very beginning of trial, Allstate objected to Mr. Crawford's introduction into evidence of a medical summary[3] and medical bills. The trial court stated that it would defer ruling on the medical summary and medical bills until after it had the opportunity to read Dr. Waguespack's deposition. At the conclusion of trial, the trial judge went into recess, then returned to render a verdict. The transcript does not indicate that Mr. Crawford's exhibits 1 and 2 were formally admitted into evidence by the court. The minute entry from that date states that the trial court did admit plaintiff's exhibits 1 and 2. In any event, it is clear from the record that the trial court did rely on the medical bills presented by Mr. Crawford as a basis for awarding special damages. Because Allstate initially objected to the admission of Mr. Crawford's medical bills and did not have an opportunity to object at the time the court actually admitted the documents into evidence, we find that its initial objection was sufficient to preserve the issue for appeal.[4]

The bill at issue is identified in Mr. Crawford's medical summary as one for one thousand one hundred thirty-six dollars and seventy cents ($1,136.70), payable to Louisiana Dental Center for services rendered on October 22, 2018. The invoice entered into evidence, however, is from St. Claude Gentle Dental Center, Inc., and Mr. Crawford is not one of the three patients listed on the bill itself.

---

[3] The medical summary, which was prepared by Mr. Crawford's counsel, listed the following medical expenses: seven thousand seven hundred ninety four dollars ($7,794.00) for Dr. Kenneth Pace, two thousand one hundred fifty-eight dollars ($2,158.00) for Dr. Daniel Johnson, two thousand dollars ($2,000.00) for Dr. Rodney Burns, three thousand seventy dollars ($3,070.00) for Dr. Waguespack, and one thousand one hundred thirty-six dollars and seventy cents ($1,136.70) for the Louisiana Dental Center. The total amount for all of Mr. Crawford's medical bills was calculated to be sixteen thousand one hundred fifty-eight dollars and seventy cents ($16,158.70).

[4] La. C.C.P. art. 1635 provides, in relevant part:

> For all purposes it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him.

A plaintiff may recover reasonable past medical expenses that he incurs as a result of an injury. It is the burden of the plaintiff to prove the existence of the injuries and the causal connection between those injuries and the accident. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 01-317 (La. App. 3 Cir. 10/3/01), 796 So.2d 802, 807. The plaintiff must show through medical testimony that it is more probable than not the subsequent medical treatment was necessitated by the trauma suffered in the accident. After a review of the record, we find that Mr. Crawford did not meet his burden of proof with regard to the dental claim. Specifically, Mr. Crawford did not offer his own testimony, or medical testimony from a dentist, to demonstrate this type of injury resulting from the 2017 accident. In addition, the only objective evidence of a dental bill tendered by Mr. Crawford does not identify him as a patient.

Accordingly, we reverse this portion of the trial court's judgment and subtract the amount of one thousand one hundred thirty-six dollars and seventy cents ($1,136.70) from the special damages category awarded by the trial court.

*Cross appeal*

Mr. Crawford has answered Allstate's appeal and asserts that the trial court erred in not awarding him future lost wages as a result of the 2017 accident.

The record shows that Mr. Crawford did not specifically seek a loss of future wages in his original petition. Although counsel did state to the trial court that Mr. Crawford was seeking future lost wages as a part of special damages, the trial court did not identify an award for same either at the conclusion of trial or in the written judgment that followed on September 29, 2020. When a judgment is silent as to part of the relief requested, the judgment is deemed to have denied that relief. *Guaranty Bank & Trust Co. of Alexandria, Louisiana v. Carter*, 394 So.2d 701 (La. App. 3rd Cir.1981), *writ denied*, 399 So.2d 599 (La. 1981).

Before a plaintiff can recover for loss of future earning capacity, he must prove the loss, not with mathematical certainty, but with reasonable certainty. Purely conjectural or uncertain future loss earnings will not be allowed. *Burgard v. Allstate Ins. Co.*, 04-1394 (La. App. 5 Cir. 5/31/05), 904 So.2d 867, 879, *writ denied*, 05-1743 (La. 1/13/06), 920 So.2d 240 *citing Branan v. Allstate Ins. Co.*, 99-1209 (La. App. 5 Cir. 4/25/00), 761 So.2d 612, 616. A determination must also be made of whether the plaintiff has been disabled from work for which he is fitted by training and experience. *Kose v. Cablevision of Shreveport*, 32,855 (La. App. 2 Cir. 4/5/00), 755 So.2d 1039, *writs denied*, 00-1177 (La. 6/16/00), 764 So.2d 964 and 00-1289 (La. 6/16/00), 765 So.2d 340. In the case of *Veazey v. State Farm Mut. Auto. Ins.*, 587 So.2d 5, 7 (La. App. 3rd Cir. 1991), the Third Circuit identified factors that a trial court should consider in assessing an award for loss of future income claim: "the injured person's age, life expectancy, work life expectancy, investment income factor, productivity increase, prospects for rehabilitation, probable future earning capacity, loss of future earning capacity, loss of earning ability, and inflation."

In the instant case, Mr. Crawford argues that he proved his claim for a loss of future earnings through his own testimony that he was no longer able to work as a carpenter, as well as a statement in Dr. Waguespack's deposition that Mr. Crawford had been deemed disabled following the 2017 accident. Conversely, Allstate asserts that there was little evidence of Mr. Crawford's work history both before and after the accident, and that his own account of working after the accident was inconsistent and contradicted by his prior employer, Edward Crawford. Allstate also points out that the Consultative Psychological Evaluation[5] by Dr. William Fowler, written in connection to Mr. Crawford's disability claim,

---

[5] The report indicates that Mr. Crawford was seeking disability benefits based on complaints of "seizures, lower back pain, left shoulder pain, jaw pain, and pain in the left leg."

does not delineate which events caused which of Mr. Crawford's complained of injuries.[6] Finally, Allstate argues that a single month of Mr. Crawford's disability income of seven hundred eighty-nine dollars ($789.00) exceeded his net income for each of the years 2015, 2016 and 2017, as indicated in his trial testimony.[7]

After a review of the record, we find that Mr. Crawford did not demonstrate to a reasonable certainty, among other factors, what his current work restrictions are, what his future earnings may have been or whether there was a possibility for his physical rehabilitation in the future that would allow him to return to some type of employment. Without sufficient evidence of his entitlement to such an award, we find no manifest error in the trial court's apparent determination that Mr. Crawford was not entitled to lost future earnings.

**DECREE**

For the foregoing reasons, the trial court's award to Mr. Crawford of special damages for dental care is reversed. The remainder of the special damages, and general damages awarded by the trial court are affirmed.

**<u>AFFIRMED IN PART; REVERSED IN PART</u>**

---

[6] To this point, Allstate suggests that the record shows that Mr. Crawford's complaints of seizures, left shoulder pain, jaw pain and leg pain were not related to the 2017 accident.

[7] The record shows that Mr. Crawford testified his net income were indicated as for 2015 was three hundred forty-nine dollars ($349.00), 2016 was four hundred seventeen dollars ($417.00), and 2017 was six hundred and six dollars ($606.00). Mr. Crawford stated that the tax return, as calculated by a tax professional, was incorrect for 2015.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**NOVEMBER 3, 2021** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 21-CA-117

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE ELLEN SHIRER KOVACH (DISTRICT JUDGE)
ROBERT J. CALUDA (APPELLEE)          CHRISTOPHER P. LAWLER (APPELLANT)

**MAILED**
GORDON P. GUTHRIE, III (APPELLEE)
ATTORNEY AT LAW
704 CARONDELET STREET
NEW ORLEANS, LA 70130